IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CHRISTINA LOYCE STICKA, | CV 18-120-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| ANDREW SAUL, Commissioner of the Social Security Administration, | |
| Defendant. | |

On August 14, 2018, Plaintiff Christina Loyce Sticka ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner" or "Defendant") regarding the denial of her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (Doc. 2.) The Commissioner has filed the Administrative Record ("A.R."). (Doc. 6.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of Defendant's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings. (Doc. 11.) The

motion is fully briefed and ripe for the Court's review.[1]  (Docs. 11-13.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds that the case should be **REMANDED** for further administrative proceedings.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on March 13, 2015.  (A.R. 184-185.)  Plaintiff alleged she has been disabled and unable to work since January 5, 2015.  (A.R. 185.)  Plaintiff later amended her alleged onset date to May 13, 2015.  (A.R. 37.)  The Social Security Administration denied Plaintiff's application initially on July 17, 2015, and upon reconsideration on November 23, 2015.  (A.R. 97-107, 108-119.)

---

[1] In her reply brief, Plaintiff takes issue with the form and content of the Commissioner's responsive brief.  (Doc. 13.)  Plaintiff contends the Commissioner has violated her Constitutional right to due process by not providing "a statement of facts relevant to the issues submitted for review" as required by Local Rule 78.2(b).  (*Id.* at 2.)  Plaintiff further argues the Commissioner's allegedly deficient briefing "warrants a remand for an award of benefits."  (*Id.* at 3.)  The Court is not persuaded.  First, there is simply no due process violation.  The Commissioner's brief complies with the substantive requirements of the Local Rules.  *See e.g. Dionne M.N. v. Saul*, 2019 WL 272408, *2, n.2 (D. Mont. July 1, 2019) (rejecting identical argument regarding the Commissioner's briefing); *Gregory J.M. v. Saul*, 2019 WL 4010838, *4, n.3 (D. Mont. Aug. 26, 2019) (same).  Second, even if the Commissioner's briefing fell short of the Local Rules, "a motion for summary judgment cannot be granted simply because the opposing party violated a local rule."  *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995).  As such, the Court will address the issues presented on their merits.  In the future, the Court urges Plaintiff's counsel to devote his efforts and space in reply to the issues presented for review, not squabble over the Commissioner's presentation.

On December 15, 2015, Plaintiff filed a written request for a hearing. (A.R. 128-129.) Administrative Law Judge Lloyd E. Hartford (the "ALJ") held a hearing on November 7, 2016. (A.R. 34.) On February 23, 2017, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 21-29.)

Plaintiff requested review of the decision, and on June 29, 2018, the Appeals Council denied Plaintiff's request for review. (A.R. 1-6.) Thereafter, Plaintiff timely filed the instant action.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d

1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Flaten*, 44 F.3d at 1457.  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.").  However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## B.  Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or

mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.    FACTUAL BACKGROUND

Plaintiff claims to suffer from irritable bowel syndrome ("IBS"), severe nausea, breathing difficulties, and back problems. (A.R. 98.) She asserts that these impairments render her incapable of performing substantial gainful employment.

### A.    The Hearing

A hearing was held before the ALJ on November 7, 2016, in Billings, Montana. (A.R. 34.) Plaintiff testified that the primary reason she was seeking disability was because of her IBS. (A.R. 62.) She explained that she had experienced IBS symptoms since the 1980's, but they had progressively worsened.

(A.R. 71.) She indicated that around 2009 she started having IBS symptoms 3 to 4 days per week, and needed to use the toilet up to 20 times per day. (A.R. 73.) She testified that around January 2015, she also began having bowel incontinence. (A.R. 43, 81.)

Plaintiff further testified that she suffers from severe nausea. (A.R. 44.) She has a difficult time eating as a result, and therefore uses marijuana to stimulate her appetite. (A.R. 45. 50.) Plaintiff stated she has difficulty maintaining her weight. At the time of the hearing, she weighed 110 pounds. (A.R. 40, 82.)

Plaintiff stated that she sees a gastroenterologist, but he has told her there was nothing further he could do for her. (A.R. 41.) She indicated she had undergone diagnostic testing, including a CT scan, stool sample, ultrasounds, testing for infections, colonoscopies, and endoscopies. (A.R. 42-43, 73.) Plaintiff has tried several medications, but they made her sick. (A.R. 42, 63, 73-74.) She has also tried adjusting her diet. (A.R. 74-75.) Plaintiff explained it was her understanding that she was diagnosed with IBS based on her symptoms, and because her doctors could not identify any other cause of her problems. (A.R. 43-44.)

At the time of the hearing, Plaintiff testified she may use the toilet up to 20 times on an average day. (A.R. 67-68.) In fact, approximately half way through the hearing, Plaintiff abruptly left the hearing room to use the restroom. (A.R. 58.)

Plaintiff stated that it is difficult for her to leave her house because of her need to be near the bathroom.  (A.R. 75-76, 79-81, 86.)  She also has difficulty completing tasks because she is interrupted by her need to use the restroom.  (A.R. 83.)  She indicated she had done two telephone job interviews on the toilet.  (A.R. 67.)  Plaintiff also testified that she had two fecal accidents in the week prior to the hearing.  (A.R. 81.)  She said she is able to avoid having accidents by staying home where she can get to the bathroom.  (*Id.*)  She has purchased adult diapers to wear but has not been able to find any that are small enough to fit her.  (A.R. 82.)

Mark J. Schwager, a Vocational Expert, also testified before the ALJ.  (A.R. 89-94.)  The ALJ asked Mr. Schwager to assume a hypothetical person who testified verbatim as Plaintiff, and asked whether that person would be able to perform any of Plaintiff's past relevant work. (A.R. 91-92.)  Mr. Schwager said no. (A.R. 92.)  He further testified that a person with an IBS condition who must use the toilet up to 20 times a day, three to four days per week, would not be able to sustain work activity.  (*Id.*)

/ / /

/ / /

/ / /

/ / /

**B**.     **Medical Evidence**[2]

    *1.     Shelly K. Castles, M.D.*

Dr. Castles is Plaintiff's primary care physician and has treated Plaintiff for 16 years.  (A.R. 520.)   In March 2015, Dr. Castles saw Plaintiff for an annual examination.  (A.R. 391.)  At that time, Dr. Castles noted that Plaintiff struggles with her weight and "has irritable bowel syndrome."  (*Id.*)  A month later, on April 3, 2015, Plaintiff reported she was having problems with IBS.  (A.R. 374.)  Dr. Castles noted Plaintiff "has frequent bowel movements every morning that lasts for about two to three hours."  (*Id.*)  Plaintiff indicated she was scheduled to have a colonoscopy.  (*Id.*)  In May 2015, Dr. Castles noted that Plaintiff had lost 4 pounds, and that she had "an ongoing battle with nausea and irritable bowel syndrome."  (A.R. 367, 369.)

In July 2015, Dr. Castles noted that Plaintiff was still struggling with IBS. (A.R. 402.)  Plaintiff reported she had seen a gastroenterologist, Dr. Zins, and had tried the two medications he suggested.  (*Id.*)  But she stopped taking them "due to problems with nausea and intolerance to the medication."  (A.R. 403.)  Dr. Castles noted Plaintiff had been able to gain 5 pounds.  (A.R. 402.)  She discussed

---

[2] The administrative record includes Plaintiff's medical records from several health care providers.  The Court has summarized only those records that are relevant to the specific issues presented for review.

nutrition with Plaintiff and supported Plaintiff's idea to try hypnosis to treat her nausea.  (A.R. 403.)

In October 2015, Dr. Castles stated Plaintiff was "doing fairly well," other than some continued problems with nausea.  (A.R. 430-31.)  In December 2015, however, Dr. Castles noted Plaintiff was having increased IBS symptoms.  (A.R. 445-45.)  Dr. Castles indicated Plaintiff was having problems primarily with diarrhea, "to the point that she has actually had two fecal accidents."  (A.R. 445.)  As a result, Plaintiff reported that she did not like to leave her house.  (*Id.*)  Dr. Castles noted her condition was "beginning to interfere with her quality of life." (*Id.*)  Dr. Castles reviewed Dr. Zins' treatment note and followed his suggestion to try a new antidepressant to see if it would help Plaintiff's IBS.  (A.R. 447.)

Plaintiff followed up with Dr. Castles in January 2016.  (A.R. 465.)  Plaintiff indicated that she did not respond well to the new medication.  (A.R. 466.)  Dr. Castles noted that IBS was "still a significant challenge for [Plaintiff.]"  (*Id.*)  In February 2016, Dr. Castles said Plaintiff's IBS continued to be a problem and was "chronic and unchanged."  (A.R. 470-71.)  Plaintiff reported having loose stools at night, and Dr. Castles noted Plaintiff had lost a few pounds.  (*Id.*)

In June 2016, Dr. Castles indicated Plaintiff was having problems with acid reflux, and that she "also continues to struggle with her irritable bowel syndrome." (A.R. 504.)  Two months later, in August 2016, Plaintiff reported her IBS was

"flaring." (A.R. 509.) Dr. Castles noted that Plaintiff was having "issues with fecal incontinence secondary to IBS, so has a difficult time leaving the house." (*Id.*) She also noted Plaintiff had decided to purchase adult diapers. (*Id.*) At that point, Dr. Castles described Plaintiff's IBS as "severe," and "extremely restrictive." (A.R. 510.)

On November 1, 2016, Dr. Castles provided a statement in support of Plaintiff's disability application. (A.R. 520-21.) Dr. Castles stated Plaintiff has "chronic abdominal pain due to gastroparesis" and "irritable bowel syndrome which results in frequent bowel movements." (A.R. 520.) Dr. Castles stated Plaintiff had seen a gastroenterologist on at least 5 occasions and had undergone extensive diagnostic workup. (*Id.*) She stated numerous medications had been trialed over the years, including amitriptyline, Imodium, Rifaximin, and dicyclomine, but Plaintiff suffered from side effects. (*Id.*) She indicated dietary changes had also been unsuccessful. (*Id.*) Dr. Castles noted Plaintiff's IBS "has caused frequent episodes of diarrhea up to 5 to 8 times average throughout the day." (*Id.*) She stated Plaintiff's IBS symptoms had worsened over the prior year, to the point she is "unable to leave the home for any extended period of time due to her frequent persistent diarrhea." (A.R. 521.) Dr. Castles said Plaintiff was "now using the bathroom up to 20 times a day." (*Id.*) She noted Plaintiff had resorted to trying adult diapers, but had not been able to find a product that fits appropriately

due to her small size. (*Id.*) Dr. Castles stated Plaintiff had actively participated in treatment, but none of the medications or lifestyle modifications she tried had significantly reduced her symptoms. (*Id.*) Dr. Castles opined that due to the severity of Plaintiff's IBS, including frequent trips to the restroom, "as well as high probability of soiling herself," Plaintiff is unable to maintain employment. (*Id.*)

### 2.    *Bradley J. Zins, M.D.*

Plaintiff saw gastroenterologist, Dr. Zins, for assessment of her bowel symptoms. (A.R. 442-43.) In April 2015, Dr. Zins performed a colonoscopy. (A.R. 261.) Dr. Zins found hemorrhoids and "evidence of mild diverticulosis in the sigmoid colon and descending colon." (*Id.*) Biopsies of Plaintiff's colon showed "no significant pathological alteration." (A.R. 265.)

In December 2015, Plaintiff saw Dr. Zins for a follow-up appointment. (A.R. 442.) He stated that Plaintiff had a longstanding history of gastrointestinal symptoms and had undergone a lot of testing over the years. (*Id.*) He indicated her April 2015 colonoscopy was "unremarkable," as was an upper endoscopy that was done three years earlier. (*Id.*) He noted she had stool studies over the years, and a recent 48-hour stool collection showed she had low volume, only about 140 ml per 24 hours, and no steatorrhea was evident. (*Id.*) He stated that in light of her longstanding problems, "this continues to be likely just an irritable bowel with some hypersensitivity of her gut." (*Id.*) Dr. Zins stated he thought it would be

worth trying a new antidepressant, and suggested Plaintiff discuss the suggested medication with Dr. Castles. (*Id.*) With regard to Plaintiff's "intermittent fecal incontinence," Dr. Zins stated that because of Plaintiff's inability to take medication, "there is not much more we can do about that at the current time." (A.R. 443.) He noted Plaintiff was already taking fiber supplements to try and combat the condition, and she could not tolerate Imodium. (*Id.*)

### 3. Fernando Caceres Lopez, M.D.

Plaintiff saw Dr. Caceres Lopez in August 2015 for a follow-up after lobectomy surgery for lung cancer. (A.R. 407.) At that time, Dr. Lopez noted that Plaintiff's physical examination was normal, including bowel sounds and soft abdomen. (A.R. 409.)

In November 2015, however, Dr. Caceres Lopez noted Plaintiff reported having significant problems with IBS. (A.R. 438.) He indicated that she was having significant depression and anxiety symptoms associated "with worsening IBS symptomology." (A.R. 440.) He concluded that Plaintiff's IBS was not controlled, and noted that she was scheduled for a follow-up appointment with her gastroenterologist. (A.R. 441.)

### 4. Barbara Dudczak, M.D.

Plaintiff saw Dr. Dudczak in October 2015 for shortness of breath. (A.R. 432.) Dr. Dudczak noted that Plaintiff was "overall doing well," but also stated

she was "actually now suffering from IBS." (*Id.*)  She noted Plaintiff was scheduled to see a gastroenterologist.  (*Id.*)

### 5.  Linda J. Starr, M.D.

On March 6, 2016, Plaintiff saw Dr. Starr at a same-day clinic for back pain. (A.R. 472.)  That day, Plaintiff reported having "some constant nausea," but said she did not have vomiting or diarrhea.  (*Id.*)

## B.  The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (A.R. 23.)  Second, the ALJ found that Plaintiff had the following medically determinable impairments: lung cancer (status post successful lobectomy and treatment), chronic obstructive pulmonary disease (COPD) and asthma, diverticulitis (mild), status post bladder surgery.  (*Id.*)

Nevertheless, the ALJ found Plaintiff did not have any severe impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months. (*Id.*)  Thus, the ALJ found Plaintiff was not disabled at step two.  (A.R. 29.)

## IV.  DISCUSSION

Plaintiff argues the ALJ erred in the following ways: (1) failing to properly credit her testimony concerning bowel incontinence; (2) improperly discounting

the opinion of her treating physician, Dr. Castles; and (3) failing to incorporate all of her impairments into the vocational consultant's hypothetical questioning.

## A.    The ALJ's Credibility Determination

Plaintiff argues the ALJ's credibility determination was erroneous because the ALJ failed to meet the specificity required to reject her testimony regarding bowel incontinence. The Commissioner argues the ALJ reasonably discounted Plaintiff's claims of disability.

The credibility of a claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear, and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v.*

*Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 834)).  *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 7559 F.3d 995, 1015 (9th Cir. 2014).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques; (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  *Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).  An ALJ may also take the lack of objective medical evidence into consideration when assessing credibility.  *Baston v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1196 (9th Cir. 2004).  But the ALJ may not reject the claimant's statements about the intensity and persistence of their pain or other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements."  20 C.F.R. § 404.1529(c)(2).

Here, the first step of the credibility analysis is not in issue.  The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  The ALJ also did not make any finding that Plaintiff is malingering.  Therefore, the ALJ was required to cite

specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her symptoms. The Court finds the ALJ failed to do so.

The ALJ found Plaintiff's testimony regarding her gastrointestinal symptoms and IBS and was not credible because (1) her daily activities were inconsistent with her alleged symptoms, and (2) Plaintiff's medical records did not substantiate her problems. (A.R. 25, 27.) Upon closer scrutiny, however, the Court finds the reasons cited by the ALJ are not supported by the record.

First, with regard to Plaintiff's daily activities, the ALJ noted that Plaintiff is capable of doing "household chores and car[ing] for pets" and "has no difficulties with personal care." (A.R. 25.) A claimant's daily activities can be grounds for discrediting the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). But Plaintiff's daily activities are not inconsistent with her testimony that she has bowel incontinence and persistent diarrhea that requires frequent visits to the toilet. Her ability to do chores or care for herself and her pets in her home, where she has ready access to the toilet and can take frequent breaks, does nothing to undermine her testimony about the severity of her IBS symptoms. As such, the ALJ did not reasonably discredit Plaintiff's testimony based on her daily activities. *See Koch v. Astrue*, 2009 WL 1743680, *13 (D. Or. June 15, 2009) (finding the plaintiff's daily activities were not a convincing reason to reject his testimony regarding his IBS and bowel incontinence because "[o]utside a workplace setting,

[plaintiff] could perform daily activities and still stop to change his clothes or take extended bathroom breaks").

Second, the lack of objective medical evidence cannot form the sole basis for discounting a claimant's testimony. Here, the ALJ's initial reason for his adverse credibility determination was legally insufficient, and his remaining reason – lack of objective medical support – is not legally sufficient by itself. *See* 20 C.F.R. § 404.1529 ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"); *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006) (stating that "[w]hile an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence," and finding where the ALJ's first stated reason for his adverse credibility determination was insufficient, his remaining reason premised on lack of medical support was also legally insufficient).

Furthermore, the ALJ's statements concerning the medical evidence are not supported by the record. For one, the ALJ got Plaintiff's diagnosis wrong. The ALJ stated Plaintiff has diverticu**litis**. (A.R. 23, 27.) But Dr. Zins stated Plaintiff's colonoscopy showed diverticu**losis**. (A.R. 261.) As Plaintiff points out,

these are different medical conditions.  This factual error may have affected the ALJ's understanding of Plaintiff's medical condition.

Next, the portions of the record the ALJ cites in support of his credibility determination do not contradict Plaintiff's testimony.  For example, the ALJ stated that in October 2015, Plaintiff reported she was "doing well."  (A.R. 27 (citing A.R. 430, 432).)  But the actual medical records cited by the ALJ specifically note Plaintiff "continues to battle nausea and likely will follow up with Dr. Zins" (A.R. 431), and that Plaintiff "is actually now suffering from IBS [and] is scheduled to see a gastroenterologist."  (A.R. 432.)   As another example, the ALJ states Plaintiff reported to Dr. Starr on March 6, 2016, that she had "no vomiting or diarrhea."  (A.R. 27 (citing A.R. 472).)  Yet on that same visit, Plaintiff did report "constant nausea."  (A.R. 472.)  Rather than being contradictory, this treatment note was consistent with Plaintiff's testimony that her nausea is distinct from her IBS, and that she does not have diarrhea every day.  (*See* A.R. 44 ("[Nausea] doesn't happen on my IBS days . . . I could be having accidents in my pants one day and not have it the next day and have my stomach just get nauseated.").)  Moreover, Plaintiff saw Dr. Starr in a walk-in clinic for back pain.  An isolated clinical note, which related solely to Plaintiff seeking treatment for a condition totally unrelated to her IBS, does not rationally undermine her credibility.  *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("it is error for an ALJ to

pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). An ALJ is not permitted to cherry-pick from mixed results to support a denial of benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ also stated the medical records were not specific about Plaintiff's diarrhea or pain. But Dr. Castles specifically documented Plaintiff's bowel and incontinence problems. (*See e.g.* A.R. 374 ("She has frequent bowel movements every morning that lasts for about two to three hours"); 445 ("she has actually had two fecal accidents"); 470 ("She is having some loose stools at night and as a result has lost a few pounds"); 509 ("She has issues with fecal incontinence . . . so has a difficult time leaving the house. She is finally at a point she has decided that she is going to buy some depends.").) Plaintiff's gastroenterologist, Dr. Zins, also documented Plaintiff's history of IBS, and noted she experienced "intermittent fecal incontinence." (A.R. 442.) The ALJ did not specifically address Plaintiff's testimony regarding her fecal incontinence.

Finally, the ALJ found the medical record did not substantiate Plaintiff's testimony because the objective test results were mostly normal. (A.R. 27.) The ALJ may have misconceived Plaintiff's impairment. "Irritable bowel syndrome (IBS) is a functional bowel disorder characterized by abdominal pain or discomfort and altered bowel habits in the absence of detectable structural abnormalities. No

clear diagnostic markers exist for IBS; thus the diagnosis of the disorder is based on clinical presentation." J. Larry Jameson, et al., *Harrison's Principles of Internal Medicine*, Ch. 320 (20th ed. 2018). Therefore, normal examinations or benign objective test results are "entirely consistent with irritable bowel syndrome." *Scott v. Berryhill*, 2018 WL 4237755, *6 (W.D. Wash. Sept. 5, 2018) (noting that physician performed an endoscopy and colonoscopy "'to rule out other problems' and thus validate that Plaintiff's abdominal symptoms were related to irritable bowel syndrome."). *See also McNeil v. Astrue*, 2011 WL 871478, *8 (C.D. Cal. March 14, 2011) (citing expert testimony that "irritable bowel syndrome does not have an objective basis" and therefore finding that "any lack of objective evidence does not refute plaintiff's allegation that she suffered from irritable bowel syndrome"); *Golding v. Comm'r*, 2010 WL 3386588, *1, n.1 (D. Or. Aug. 24, 2010) (noting that "[a]lthough IBS can cause chronic recurrent discomfort, it does not lead to any serious organ problems. Diagnosis usually involves excluding other illnesses.").

Treatment records must be viewed in light of the overall diagnostic record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). When read as a whole and in context, the treatment records and clinical observations cited by the ALJ here do not reasonably contradict or undermine Plaintiff's testimony. Accordingly, the

Court finds the ALJ's credibility finding is not supported by specific, clear, and convincing reasons.

## B. The ALJ's Evaluation of the Treating Physician Opinion

In Plaintiff's "Statement of Issues Presented for Review," she asserts the ALJ improperly discounted the opinion of her treating physician, Dr. Castles. Later in her brief, Plaintiff also argues the ALJ failed to give proper weight to the opinions of Dr. Bradley Zins, Dr. Fernando Caceres Lopez, Dr. Barbara Dudczak, and Dr. Alexander Kraev.[3]  The Commissioner counters the ALJ reasonably evaluated the medical opinion evidence.

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.)  The Commissioner applies a hierarchy of deference to these three types of opinions.  The opinion of a treating doctor is generally entitled to the greatest weight.  *Id.*  ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors

_____

[3] Upon review of the Record, it appears Dr. Kraev only treated Plaintiff in relation to her lung cancer.  His treatment notes do not address or mention her gastrointestinal symptoms.  Plaintiff has not challenged the ALJ's decision as it relates to her lung condition.  Accordingly, the Court finds no error with regard to Dr. Kraev.

who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id.* *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p). In that event, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *See* Social Security Ruling 96-2p (stating that a finding that a treating physician's opinion is not well

23

supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Opinions of treating physicians may only be rejected under certain circumstances. *Lester*, 81 F.3d at 830. To discount an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons." *Id.* To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick*, 157 F.3d at 725. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831. However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

### 1. Dr. Castles

The ALJ stated he gave Dr. Castles' opinion "little weight" because (1) it was based only on Plaintiff's subjective reports and (2) her treatment notes did not support her opinion. (A.R. 28.)

"An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). *See also Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (stating an ALJ may reject a treating physician's opinion if it is "premised on [the claimant's] own subjective complaints, which the ALJ had already properly discounted"). Here, however, the ALJ failed to give specific, clear, and convincing reasons for discounting Plaintiff's testimony. As such, the ALJ did not "properly discount[]" Plaintiff's

testimony.  The ALJ's first reason is therefore insufficient to justify rejecting Dr. Castles' opinion.  *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

As to the second reason provided, an ALJ may reject a treating physician's opinions on the basis of a conflict between the physician's opinions and his treatment notes.  *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).  The ALJ stated Dr. Castles' notes do not adequately document that Plaintiff has severe and disruptive gastrointestinal problems.  (A.R. 28.)  As set forth above, however, Dr. Castles did record specific observations about Plaintiff's IBS and fecal incontinence problems.  (*See* A.R. 374, 445, 470, 509.)  Some of Dr. Castles' other notes are less specific.  (*See* A.R. 369 (noting "ongoing battle" with IBS); 402 ("She does continue to struggle with her IBS"); 465 ("She continues to have problems with her IBS"); 471 (noting IBS was "chronic and unchanged"); 482 ("continues to struggle with IBS"); 505 ("She also continues to struggle with her irritable bowel syndrome.").  Moreover, the Ninth Circuit "do[es] not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record."  *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007).  As the Ninth Circuit explained, "[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel – not to provide evidence for disability determinations."  *Id.*

The ALJ further stated that the medical record does not support Dr. Castles' opinion because the objective testing in the record was negative for any significant gastrointestinal pathology. As discussed above, however, IBS generally "does not lead to any serious organ problems." *Golding*, 2010 WL 3386588, at *1, n.1. Additionally, "[n]o clear diagnostic markers exist for IBS." *Harrison's Principles of Internal Medicine*, Ch. 320. Rather, "[d]iagnosis usually involves excluding other illnesses." *Golding*, 2010 WL 3386588, at *1, n.1. Therefore, the lack of "significant gastrointestinal pathology" in the record does not, standing alone, undermine Dr. Castles' opinion.

Further, even where there is a lack of objective evidence to support a treating physician's opinion, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. Here, the ALJ did not consider any of these factors. The ALJ's only mention of the treatment relationship between Plaintiff and Dr. Castles is a single reference that Dr. Castles is Plaintiff's "primary care physician." (A.R. 27.) The ALJ therefore did not consider the length of the treatment relationship, the frequency of examination, the extent of the treatment relationship, or the consistency of the opinion with the record as a whole. C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6). The Ninth Circuit has determined such a failure "alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676.

Therefore, the ALJ did not properly consider or weigh Dr. Castles' opinion.

## 2.  *Plaintiff's Other Treating Physicians*

In his decision, the ALJ summarized Plaintiff's medical records, including treatment notes from Dr. Zins, Dr. Caceres Lopez, and Dr. Dudczak.  (A.R. 27-28.) The Court notes that generally treatment notes do not constitute medical opinions the ALJ must weigh if the notes do not offer opinions regarding Plaintiff's limitations or ability to work.  *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

Dr. Zins, Dr. Caceres Lopez, and Dr. Dudczak did not offer opinions regarding Plaintiff's limitations or ability to work.  Therefore, their treatment notes are not medical opinions the ALJ must weigh.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that where physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.").

Accordingly, while the ALJ mentioned the treatment notes in his decision,

he did not err by failing to provide clear and convincing reasons for discounting them.

**C.     Hypothetical Questions Posed to the Vocation Expert**

In Plaintiff's "Statement of Issues Presented for Review," she argues the ALJ failed to incorporate all of her impairments into the hypothetical questions posed to the vocational expert.  Later in her briefing, however, Plaintiff asserts the vocational expert's testimony "establishes an award of benefits is appropriate." (Doc. 11 at 25.)  Therefore, it is not entirely clear what Plaintiff's argument is as it relates the vocational expert.

The issue as stated in Plaintiff's "Statement of Issues Presented for Review" is typically an argument directed towards an ALJ's determination at step five. Here, however, the ALJ never reached step five of the disability analysis, because he found Plaintiff did not have any severe impairments at step two.  As such, there is no error to consider with regard to the vocational expert at step five.

With regard to Plaintiff's latter argument, the Court declines to rule that the vocational expert's testimony warrants benefits.  Nevertheless, the Court notes the ALJ's failure to consider Plaintiff's IBS and fecal incontinence is problematic. Plaintiff testified that she has to use the toilet up to 20 times per day, three to four days per week, and that she has fecal accidents.  (A.R. 69, 80-81.)  In response to the ALJ's first hypothetical scenario, the vocational expert testified that if a

hypothetical individual had to use the toilet as often as Plaintiff testified she does, the person would not be able to sustain work activity.  (A.R. 92.)  Therefore, had the ALJ credited Plaintiff's testimony and/or properly weighed Dr. Castles' opinion, and considered Plaintiff's IBS and bowel incontinence severe impairments at step two, the ALJ may have determined that Plaintiff is disabled. Accordingly, the Court finds the ALJ must reassess whether Plaintiff's impairments, including her IBS and fecal incontinence, are severe at step two.

## V.    REMAND OR REVERSAL

Plaintiff asks the Court to reverse the ALJ's decision and grant her benefits. (Doc. 13 at 12.)  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."  *Reddick v. Chater*, 157 F.3d at 728.  If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate."  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall re-evaluate Plaintiff's credibility and Dr. Castles' medical opinion. The ALJ shall also re-consider the evidence at step two, including Plaintiff's IBS and fecal incontinence. The Court encourages the ALJ to consult a gastroenterologist or medical expert to explain the diagnostic criteria for IBS and the significance of Plaintiff's test results. The ALJ shall apply the five-step sequential evaluation process, as appropriate, to determine whether Plaintiff can perform work in the national economy based upon a hypothetical that incorporates all her impairments and limitations supported by the record.

## VI. CONCLUSION

For the foregoing reasons, the Court orders that the Commissioner's decision is **REVERSED**, and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

DATED this 30th day of September, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge